UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Matthew Greenwood

    v.                            Civil No. 11-cv-01-JD

Merrimack County, et al.


O R D E R

Matthew Greenwood alleges a claim under 42 U.S.C. § 1983 and a state claim against Paul Sylvester, arising from events while Greenwood was a pretrial detainee at the Merrimack County Department of Corrections.[1]  The claims against Merrimack County previously were resolved on summary judgment.  Sylvester moves for summary judgment on the claims against him, and Greenwood objects.


Standard of Review

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A party opposing summary judgment "must set forth

---

[1] Paul Sylvester died on October 2, 2011.  His wife, Joyce Sylvester, was appointed administrator of his estate on May 28, 2013, and the estate was substituted as the proper party on June 10, 2013.  Despite the substitution, the defendant is referred to as "Sylvester" in this order.

specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Material facts are "facts that might affect the outcome of the suit under the governing law." Id, at 248. The court considers the undisputed material facts and all reasonable inferences from those facts in the light most favorable to the nonmoving party. Avery v. Hughes, 661 F.3d 690, 693 (1st Cir. 2011).

## Background

Greenwood was a pretrial detainee at the Merrimack County jail from January to July of 2008. Just before entering the jail, Greenwood had surgery to repair his severely fractured ankle, which included installation of hardware in the ankle. The surgery was done at Lakes Region General Hospital by Dr. Glenn Lieberman.

Greenwood was discharged from the hospital on January 15, 2008, with prescriptions for Toradol and Oxycodone for pain. He was instructed not to bear weight on the ankle, not to remove the splint, and not to push anything down into the splint. Greenwood was arrested for a probation violation on January 25, 2008, and was taken to the Merrimack County jail.

Sylvester was a physician's assistant at the jail who treated Greenwood during his detention. For his defense in this

case, Sylvester retained Dr. Mark M. Scheffer, an orthopedic surgeon at Dartmouth-Hitchcock Clinic, to review Greenwood's medical records.[2] Dr. Scheffer states in his affidavit submitted in support of the motion for summary judgment that Greenwood was given over-the-counter pain medication shortly after he arrived at the jail on January 25, 2008. He also states that Sylvester ordered Oxycodone for Greenwood on January 28.

The jail's medical records submitted by Greenwood show that Greenwood received Oxycodone, along with other medications, on January 28, 2008. He had a medical order for a lower bunk, an extra blanket, and use of crutches. He was also directed to "shower in medical." On March 10, 2008, a document from the jail medical department signed by Greenwood and a nurse states that Greenwood refused to comply with recommended treatment that he use crutches at all times, not bear weight on the ankle, not go to the gym or work, use a lower bunk, and elevate his ankle.

Greenwood had a follow-up appointment with Dr. Lieberman on March 13. In his notes, Dr. Lieberman stated that he was concerned that Greenwood had not been compliant with the recommended treatment. Dr. Lieberman noted that the cellulitis

---

[2]The parties submitted copies of only some of the medical records, not the entire medical record. Dr. Scheffer's review of the medical record provides additional information.

was gone but that Greenwood had a small raised area that could be a pocket of infection related to the plate in his ankle.  Dr. Lieberman stated that he would see Greenwood again in two weeks and released him to bear weight on his ankle.

Dr. Scheffer states that Sylvester examined Greenwood's ankle on April 7 and noted "moderate erythema" (redness of the skin) and mild tenderness.  Sylvester diagnosed mild resolving cellulitis and ordered that the antibiotic medication be continued and that Greenwood wear high-top sneakers.  At the end of April, Greenwood asked Sylvester to limit Greenwood's assignments for kitchen duty to two or three days each week, and Sylvester complied.  At that time, Greenwood's ankle was pink with flaky skin, and Greenwood reported less pain.  Dr. Scheffer states that Sylvester consulted Dr. Lieberman about Greenwood's ankle on several occasions in April and May.

Dr. Scheffer also states that the medical records show that jail medical staff responded to Greenwood's complaints and requests.  He states that Sylvester ordered pain medication for Greenwood, changing from Oxycodone to Ultram in March, ordering Naprosyn and Tylenol in mid-March, and prescribing Ultram again in early April at Greenwood's request.  Dr. Scheffer explains that the medical records show that the prescription for the antibiotic Keflex was changed to Bactrim, due to a possible

allergy, and an error in prescribing Keflex in April was corrected immediately.  Dr. Scheffer also reviews Greenwood's treatment in July, when despite Sylvester's concern that Greenwood was sabotaging his own treatment, Sylvester ordered treatment including an ice pack and wheelchair for Greenwood.  He explains that any improper handling of antibiotics at the jail, as charged by Greenwood, was done by nursing staff, not Sylvester.

   Greenwood was seen by Dr. Lieberman in his office on May 30, 2008, when a "PICC line" was put in, he was treated with antibiotics, and cultures were taken of drainage from his ankle.  He also had erythema and swelling in the ankle.  On June 3, 2008, Greenwood was admitted to the Lakes Region General Hospital for treatment with IV antibiotics, irrigation debridement, and removal of the plate from Greenwood's ankle.  Dr. Lieberman discussed the plan of treatment with Greenwood and with Sylvester.  Dr. Lieberman wrote in his discharge summary on June 7 that Greenwood did well after surgery and prescribed antibiotic medication and Oxycodone along with other medications.  Greenwood was discharged to the jail with instructions that he could not get the incision wet, could not participate in athletic activity, but could bear weight on the ankle.

On July 9, 2008, Dr. Lieberman saw Greenwood again because x-rays taken at the jail showed a new fracture in his ankle "with what appeared to be an osteomyelitis." Greenwood was admitted to the hospital for intravenous antibiotics and splinting of his leg. On July 16, Dr. Lieberman removed the screw from Greenwood's ankle and also irrigated and debrided the bone. Cultures from the area were positive for infection. Greenwood was discharged to "skilled care" on July 19 and then was discharged to his home on August 20, with the second stage of surgery scheduled for August 26.[3] On August 25, Greenwood was admitted to the hospital for the second stage surgery.

## Discussion

Greenwood alleges in Count I that Sylvester was deliberately indifferent to his serious medical needs, in violation of the Fourteenth Amendment, and alleges in Count II that Sylvester was negligent in providing medical care. The court previously granted summary judgment in favor of Merrimack County on the negligence claim in Count II because Greenwood does not have an expert witness to support his claim of medical negligence. In response to Sylvester's motion for summary judgment, Greenwood

---

[3] In his complaint, Greenwood explains that his bail was changed to personal recognizance while he was in the hospital.

6

does not provide support for his medical negligence claim against Sylvester and concedes that he would need expert testimony to support a claim that Sylvester improperly managed Greenwood's infections.  Therefore, Sylvester is entitled to summary judgment on Greenwood's claim in Count II.

Medical care in jail violates the Fourteenth Amendment if the "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs."  Ruiz-Rosa v. Rullan, 485 F.3d 150, 156 (1st Cir. 2007) (internal quotation marks omitted).  Deliberate indifference means that the defendant was "aware of facts from which the inference could be drawn that a substantial risk of serious harms exists, and he must also draw the inference."  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  A plaintiff may show deliberate indifference to a serious medical need by "the denial of needed care as punishment and by decisions about medical care made recklessly with actual knowledge of impending harm, easily preventable."  Ruiz-Rosa, 485 F.3d at 156 (internal quotation marks omitted).

Sylvester contends that expert witness testimony is required to prove Greenwood's claim because the nature and necessity of his treatment is beyond common knowledge.  Because Greenwood does not have an expert witness to support his claim, Sylvester argues that he is entitled to summary judgment.  Sylvester also contends

that he is entitled to summary judgment because his own expert witness, Dr. Scheffer, has given opinions about the care Sylvester provided that establish that Sylvester was not deliberately indifferent to Greenwood's serious medical needs. Greenwood contends that expert testimony is not necessary to prove his deliberate indifference claim and that his own statements about the treatment he received at the jail shows deliberate indifference to his serious medical needs.

Whether expert testimony is necessary to prove deliberate indifference to a serious medical need depends on the nature of the specific issues in the particular case and what other evidence is available in the record.  See, e.g., Ortiz v. City of Chicago, 656 F.3d 523, 534-35 (7th Cir. 2011) (expert not needed when obviously ill inmate dies after defendants failed to provide any medical care); Meeks v. Allison, 290 Fed. Appx. 4, 5 (9th Cir. 2008) (no need for expert when sufficient evidence exists to show serious medical need); Brown v. Englander, 2012 WL 1986518, at *3 (D.N.H. June 1, 2012) (expert needed to show surgery was medically necessary); Chambers v. Warden, 2004 WL 42637, at *4 (D.N.H. Jan. 8, 2004) (expert needed to show need and availability of treatment which was not apparent from the record).  Because the record does not support Greenwood's claim

that Sylvester was deliberately indifferent to his serious medical needs, the issue of expert testimony need not be decided.

In this case, there is no dispute that Greenwood's ankle injury was a serious medical need and that Sylvester was aware of the injury and of Greenwood's need for treatment. The parts of the medical record provided show that Greenwood received treatment for his ankle while he was in jail and that Sylvester provided appropriate treatment. Dr. Lieberman's notes show that he consulted with Sylvester about treatment for Greenwood and that he treated Greenwood during that time. Dr. Scheffer's review of the records and his opinion about the adequacy of the care Greenwood received show that Sylvester was not deliberately indifferent to Greenwood's medical needs.

Greenwood's statements about the treatment he received are mostly general complaints about the jail staff which do not support his claim against Sylvester. As to Sylvester specifically, Greenwood stated in answers to interrogatories that Sylvester did not write orders for medical passes for special sneakers, a lower bunk, a handicap shower, and crutches or a wheelchair and that Sylvester allowed Greenwood to work in the kitchen and to be taken from the medical department. The record, however, contradicts those complaints, showing that Sylvester did order those accommodations for Greenwood. In addition, the

record shows that Greenwood did not comply with the restrictions and accommodations that were ordered for treating his ankle, including the requirement that he not put weight on the ankle.

Greenwood also cites occasions when Sylvester refused to see him immediately when he was in extreme pain, disregarded Greenwood's complaints, prescribed the wrong antibiotic, and told him to use his leg and to "stretch it out" when he complained of pain.  In each case, however, Greenwood received treatment or the mistake was corrected promptly.  In addition, when Sylvester prescribed the wrong antibiotic, Greenwood states that Sylvester apologized for the mistake.

The circumstances that Greenwood describes do not approach the level of deliberate indifference.  Nothing in Sylvester's treatment suggests that he denied Greenwood needed medical care as punishment or made reckless medical decisions.  Instead, the record shows that despite the medical care Greenwood received, he required additional surgeries to treat infection and another broken bone.  Disagreements about the course of treatment and even negligent care do not support a claim for deliberate indifference to serious medical needs.  Leavitt v. Corr'l Med. Servs., Inc., 645 F.3d 484, 498 (1st Cir. 2011); Ruiz-Rosa, 485 F.3d at 156.

Dr. Scheffer addressed each of Greenwood's complaints about Sylvester's treatment with references to the medical records that show Greenwood received care for his ankle.  Dr. Scheffer concluded that Sylvester did not violate the standard of care for physician's assistants and that nothing Sylvester did or did not due likely caused the problems that lead to the additional surgeries on Greenwood's ankle.  Therefore, because Greenwood did not provide evidence to show a genuine dispute as to whether Sylvester was deliberately indifferent to his serious medical need, Sylvester is entitled to summary judgment.

## Conclusion

For the foregoing reasons, the defendant's motion for summary judgment (document no. 24) is granted.

The clerk of court shall enter judgment in accordance with this order and the order granting summary judgment on Counts II and III (document no. 23), and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

June 18, 2013

cc:  Kenneth C. Bartholomew, Esquire
     Michael J. Sheehan, Esquire